Good afternoon, Your Honor. I hope you can hear me all right. My name is Carmen Smarandoyo. I represent Mr. Perry, and I would like to reserve two minutes. Okay, thank you. In this case, under the Supreme Court decision in Rodriguez, Detective Constantine's questioning of Mr. Perry was only legal. Questioning regarding the storage unit burglary was only legal if he had reasonable suspicion that Mr. Perry committed that burglary. The D.C. Court found this to be a closed case but denied the motion to suppress, and it did so by committing two distinct errors. The first one, on which I would like to spend no more than 30 seconds, is misallocating the burden of approving the stops legality to Mr. Perry in contravention of longstanding 930 precedent and Supreme Court case law on the issue. And that one, that error was particularly important because in the D.C. Court's own words— I was wondering when I read this part of your brief was, it seems to me that we review this issue de novo, don't we? Don't we just need to decide de novo now ourselves whether there was reasonable suspicion? And if so, why should we worry about exactly how the District Court explained the District Court's ruling? Well, you are correct, Your Honor, and that's the reason why I would prefer to spend most of my time on the substantive part of the argument. But I think you do care because by the District Court's own admission, this was a closed case. So in a closed case, the proponent of the evidence, the party with the burden of proof, loses. So under that logic, the government should have lost. And I actually disagree that this was a closed case, as I mentioned. I think it's actually a pretty easy case when one considers what happened here. And I would like to move to the second error, which is that the D.C. Court gave at a minimum undue weight to Mr. Perry's designation as a suspect in a different three-month-old storage unit burglary, which the D.C. Court explained at multiple junctures in the case that it was the critical factor in its analysis. So again, that's what the District Court said, but what if we disagree? I mean, I'm not sure we need to decide if the District Court exactly looked at each piece of evidence with the correct weight. Don't we just need to decide whether there was reasonable suspicion? And if so, why isn't there reasonable suspicion even without the database? Because what Detective Constantino had without the police database was essentially speculation. And I'm happy to go through every single one of the facts, both in favor and which way against reasonable suspicion. And I think it's important to remember that the reasonable suspicion analysis takes into account both kinds of evidence. Counsel, I just don't see how you can describe this as nothing more than speculation. I mean, he had opportunity. He gave a false statement when he, according to the storage locker manager, when he signed up, he was there at a time when this could have occurred. He had things that at the very least could have been stolen in the burglary. So even putting aside the tip, and I don't think we, under the Supreme Court precedent, we can put aside the suspect designation. But even if we put it aside, I just don't see how you can describe it as just speculation. Because, Your Honor, if I may, those are not the only facts that Constantino knew. First of all, sure, he had opportunity, but so did many other people with access to the public storage premises. Do we know how many people entered the storage premises in that 24-hour period? We don't know, but we know that Mr. Perry was not the only one, because nobody said so. Say there were five. Say five people entered in the 24-hour period. Wouldn't there be reasonable suspicion against all five? Just by going into premises that they have lawful right to be there, I don't think, Your Honor. Well, if there's a very small number of people who could possibly be a suspect, and we know there was a burglary, say it's three people were there, would they all be suspects? Well, Your Honor, I would like to point out that apparently the fence to the premises was cut through, and Victoria Domingo, the manager of the premises, believes that's how the burglars actually accessed the premises. So I don't think that if we could have, on different facts, without the fence being cut, maybe in that situation the number of people would have been very important. But we also know that the fence to the premises was cut, and that's how Domingo seems to believe that the burglars accessed the premises. So I'm not sure that the number of people with lawful access to the premises shows much when we know there was alternative means of accessing those premises. And I go back to the tip, in effect, the indication that he was suspected in a very similar robbery. Why should that not be part of the mix? Well, Your Honor, the question is how much should be part of the mix, right? That's the critical question. And let me start with the fact that when the government says that this is a similar burglary, the similarities are very superficial. I mean, I personally have, I would imagine that 99% of all storage unit burglaries are committed the same way. So whatever superficial similarities exist, they're just too superficial, too generic to allow for any kind of reasonable inference. Counsel, I don't really follow your argument. I mean, it's a storage unit burglary. Your client is pulled over for a storage unit burglary with, however you want to characterize it, at least some reason to believe he might have been involved. And I know you argue it doesn't amount to reasonable suspicion. But the fact that he's been designated a suspect in a relatively recent storage unit burglary, I don't see how you can say that that is basically irrelevant. Well, Your Honor, I think we have to go back to Thomas and Cervantes, which tell us how to assess this kind of police law enforcement tape. And they do tell us that when they are conclusively and they lack factual basis or any other means to determine their reliability, in that case, they're akin to an anonymous tape. Counsel, in this case, we have the records from Supplement 2, which indicates that the detective added your client as a suspect, I believe, on March 7th. But on March 7th, she looked at the video. She described the video. And at least there's a superficial similarity between your client's appearance based on the mugshot that was in the record. And what she describes she saw in the video. So why wouldn't that have some indication of reliability beyond what our court described as this speculation in Thomas? The fact that she looked at the video and added your client as a suspect at the time she's looking at the video. Because Detective Constantino didn't know that, Your Honor. Detective Constantino's view is, I think, irrelevant. I think it's the person who adds it, not the person who sees the suspect designation under the Supreme Court's decision in the Hensley case. Well, Your Honor, I respectfully disagree. Under Thomas and Cervantes, we look at what the officer in the possession of the tape knows, not what the person making the designation knows. Counsel, how would that enhance the purpose of the exclusionary rule, which is to deter police misconduct? How would looking at the person who sees the tip deter police misconduct as opposed to the person who creates the suspect designation? Doesn't the Supreme Court tell us that you have to look at the person who enters it into the system? Because if there's any misconduct, it's theirs, not the officer who relies on it. Your Honor, I would like to take a minute to discuss Hensley and then go back to the purpose of the exclusionary rule. Hensley, which builds on Wisely, concerns a situation where a police officer made an official request for somebody else to stop somebody or to arrest somebody in Wisely. So in that situation, as the Supreme Court explained, the person receiving the official request for action is entitled to rely on that because there is an assumption that the person making the request has the requisite reasonable suspicion. This is not what happened here. Detective Cozans didn't put out an official request asking that Mr. Perry be investigated for the old burglary. What she did was make a notation. She clicked a button. She dropped down menu, whatever she did, in what essentially is her internal file.  And that is a very big distinction because whatever reasons we have in Hensley, meaning that in that situation, the police officers in the field don't have time to double check if the requester had reasonable suspicion or why not, those kinds of exigencies and efficiency considerations do not exist in a situation where you can pick up the phone and just ask your colleague, why did you do this? Or when the software itself allows for Detective Cozans to explain why she designated Mr. Perry as a suspect. I understand your argument, but I don't think it follows from from Hensley. And I don't think I don't think it follows from the purposes of the exclusionary rule. But I certainly understand your argument. Well, your honor, both Hensley and wisely were decided or cited. And I apologize in comment. So this court in common certainly consider Hensley and wisely. And the reasoning and the rationality that is how it is. I will say what this court must follow. And I'm sorry. So, counsel, I think I should interrupt you because we have you over your time already. So I will still give you two minutes for rebuttal. But let's let the government argue next, please. Sounds good. Thank you. Good afternoon, your honors. Vanessa Jones on behalf of the United States. May it please the court. I agree with appellate counsel that this is not a close case, but for the opposite reason. There was ample facts here to support reasonable suspicion. In fact, the government's position is that the facts here supported probable cause. When Deputy Constantino approached Perry's car, he knew no fewer than six factors that gave him probable cause. First, he knew that Perry was at the scene of the crime around the time that the burglary likely occurred. And this is because not only was the storage unit inspected the night the day before at 9 a.m., but there was an additional fact that Constantino knew that placed that burglary in time, which was the explosion of the firecracker. That morning that the storage unit manager heard and told Deputy Constantino. So that burglary was placed in time that morning, and it was around the time that Perry accessed the storage unit. The second factor that I'm not sure I had understood from your brief that the firework necessarily happened closely in time to the burglary. How did they know that? Your honor. Yes. I think your brief could have been clearer at this point. The firecracker was one of the items that was stolen from the storage unit, according to Edwards, who was the storage unit owner and whom Deputy Constantino spoke with that morning. And so when Domingo, the storage unit manager, told Constantino that she heard a firecracker go off, that combined with the fact that Constantino knew that a firecracker was one of the items that had been stolen, places the burglary in time. It's at least some evidence that someone was messing around with that firecracker that morning. And it's evidence that at least the officer could have inferred, suggested that that burglary occurred that morning. It could have been a different firecracker though, right? It could have. I mean, it seemed odd to me that a firecracker was being set off at a storage unit at 915 in the morning. So at least I think the officer would have been reasonable in drawing an inference that that was perhaps a firecracker from that unit. It's one of the items that Edwards told him was stolen. So I think it's some piece of evidence that places this burglary more specific in time than just within the last 24 hours. Then moving on to the second factor, the storage unit manager owner told Constantino that the stolen items included approximately $6,000 worth of tools. And Constantino also knew that the storage unit manager had seen Perry pushing what appeared to be a black tool bag into the trunk of the Mercedes, the black Mercedes, right near the storage unit when she went to inspect the broken fence that she learned about. Now just these three factors were enough to establish probable cause that evidence of the burglary would be found in the black Mercedes. But the recording had been a red toolbox, not a black tool bag, right? Well actually, Edwards, who was the owner, told Constantino that there were two different toolboxes. One of them he did say was a red toolbox. The other one, it's unclear what the color was. I don't think he specifies. He also proceeds to list a number of tools. He says to Constantino that over $6,000 worth of tools were stolen from the storage unit locker. So it's certainly possible that the tool bag, even though Domingo was the one who tells Constantino that she sees this black tool bag being pushed into the trunk, I still think that that is evidence that Constantino could have inferred that these were proceeds from that burglary, given just the number of different tools that he learns of that morning from Edwards. But going on, obviously this was not all that Deputy Constantino knew. He also had looked Perry up in the Records Information Management System, the RIN database, and he learned that Perry was a suspect in another storage unit burglary committed just a few months before. Counsel, with regard to that, you had the opportunity to put on evidence as to why Detective Cousins added the defendant as a suspect, right? Correct, Your Honor. And did you? Did the basis for that suspect designation? Yes. Did she testify to that? No. So before the district court... Why didn't the government present that either in the form of a declaration or oral testimony, why she added the defendant as a suspect? I guess I'd answer that two ways, Your Honor. First, I don't think that that information is necessary for the district court to have made a finding that the suspect designation was reliable, that it was trustworthy, and that the information contained in the narrative of that police report was relevant to Deputy Constantino's decision that there was a reasonable suspicion. You might be right, but if, for example, she added him as a suspect because she looked at the video and thought he looked like the person in the video after looking at the mugshot, I mean, I can't see any reason why the government wouldn't take that step of adding it. Well, Your Honor, there was, I believe you're referencing Supplemental 2, and there was evidence in the record that the government submitted that demonstrated exactly what Deputy Constantino viewed that morning, and I refer you to ER 240, and this lists out a minute-by-minute account, this is the audit of the RIMS database, that shows that Deputy Constantino viewed Supplemental 2, and he viewed the narrative. And so I think part of this is that the, and the government also did put in the full police report and Supplemental 2 that Your Honor was referencing previously, so a lot of, all of that evidence was before the district court. It was, the district court could find that Deputy Constantino had reviewed those documents by the time that he stopped Perry that morning, and as Your Honor noted before, those documents have a clear connection to the burglary that Deputy Constantino was investigating that morning. And I just like add the narrative statement itself, not only does it show the same storage unit company, same county, but it also shows that it was likely an inside job. The Belmont burglary was committed by somebody who had the access codes, and that's clear from the narrative of the police report. And this, the burglary that Constantino was investigating that morning, it also appeared that Perry had accessed this first with his codes, and then unclear exactly how he got all the proceeds out. Perhaps Ginzo and him had caught the fence later, it's unclear from the record, but certainly there was a connection there between the Belmont burglary, where the access codes had been used to gain entry, and the burglary that Constantino was investigating here, where Perry became a suspect. Does that address your question, Your Honor? Well, it still doesn't answer why the government didn't do it. But I mean, obviously, the government didn't, I think it would have made things easier if Cousins had said why she added him as a suspect. But I mean, I agree, we can certainly look at the police reports, but I think it would have been a lot clearer because as I put in my question to your colleague, I believe that under Hensley, we need to look at the basis for Cousins designation, not forcing Constantino to do that work himself before he can rely on it. But I understand your answer. With respect to the firecracker, do I have it right that Perry admitted that he had set off a firecracker? He did, Your Honor. Did he say what he was doing, setting off a firecracker at 930 in the morning, or any explanation? He did not. That's not in the record. As I'm sure you're aware, Your Honor, the district court did not consider that additional fact that Perry admitted to setting off a firecracker. As there's an argument there that that was beyond the initial time period for that initial stop when the district court was considering reasonable suspicion. But yes, he does admit to that. And it's unclear why, perhaps in the process of emptying things out or taking things and putting them in the car, it accidentally went off. That's not clear from the record. But I just want to make a brief point. I see I'm getting close on my time. I just want to make a brief point that this case, the defendant has relied on anonymous tip cases and tip cases. But this case is really more similar to third-party report cases, just like Fernandez Castillo, which is a case that the government cites on page 18 of our answering brief. But we don't go into the facts there much in our brief, but I think they're really informative. And that was a case about an officer who received the report from the Department of Transportation employees that's relayed to the officer through the dispatch. And the court considered that there and under the sort of third-party report framework, considered whether it was trustworthy and reliable, whether there were significant indicia of reliability such that the officer could rely on that information. And certainly, putting this case in the context of Fernandez Castillo, the RIMS designation was more reliable than the report in that case because it was linked to a specific police report in a specific case within a heavily audited private police database that could only be accessed by members of the San Mateo Sheriff's Department. Unless there are questions, because you're over your time now. But maybe I apologize. Thank you. OK, so we have two minutes for rebuttal that unless sorry, Judge Bennett, did you have a question? No, I did not. Thank you. Great. Sorry. So let's go to the rebuttal then, please. Sounds good. Thank you, Your Honor. Very briefly, Detective Constantino could not have relied on the explosion of the firecracker because, according to Domingo, that explosion happened after Mr. Perry actually left the premises. She said that the explosion happened on 9-15. He had left by 9-10. And furthermore, as the district court said, the question about the firecrackers actually was part of the impermissible prolongation. So that is not a permissible consideration in this appeal either. I would like also to emphasize that the government seems to speculate that Constantino knew more than he actually said that he did. All he said in his two declarations and in his testimony is that he knew that Mr. Perry had been designated as a suspect. Nothing else. So whatever speculations we can engage in, they are not supported by the record. And finally, Your Honor, about Fernandez-Castillo. Unlike Fernandez-Castillo here, Detective Perry knew, Detective Constantino knew nothing else about the suspect's designation. And contrary to what the government says, the RIMS itself as a system is actually very unreliable. It has no quality control features. It does not require officers to use—I'm sorry, to use a reason of suspicion. And for all those reasons, Your Honor, I respectfully submit that there was no reason of suspicion for Detective Constantino to prolong the stop and that Your Honor should revert the district court's order. Thank you both sides for the helpful arguments. This case is submitted.
judges: Friedland, Bennett, Rakoff